IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 24, 2005 Session

## LORNA McGUIRE TOWNSEND v. JAMES ROSS TOWNSEND

**An Appeal from the Chancery Court for Madison County**
**No. 60600     James Weatherford, Senior Judge**

**No. W2004-02034-COA-R3-CV - Filed December 14, 2005**

This is a divorce and child custody case. After thirteen years of marriage, the wife filed a complaint for divorce and sought custody of the couple's two minor children, alleging irreconcilable differences and inappropriate marital conduct. The husband admitted irreconcilable differences, but argued that the wife had committed the inappropriate marital conduct. After a lengthy trial, the trial court designated the wife as primary residential parent, ordered the husband to pay child support, divided the marital property, ordered the husband to pay the wife $70,000, awarded the wife attorney's fees, and taxed the costs of the litigation against the husband. The husband appeals. We affirm.

**Tenn. R. App. P. 3 Appeal; Judgment of the Chancery Court is affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Terry J. Leonard, Camden, Tennessee, for Appellant James Ross Townsend.

Mitchell D. Moskovitz, Memphis, Tennessee, and Jason A. Creech, Memphis, Tennessee, for Appellee Lorna Townsend.

**OPINION**

Plaintiff/Appellee Lorna Townsend ("Wife") and Defendant/Appellant James Ross Townsend ("Husband") were married in Tennessee on June 17, 1989. The parties had two minor children—Taylor Ann Townsend (D.O.B. 10/06/96, adopted by the parties) and James Ross Townsend II (D.O.B. 9/19/99).

Husband was in sales and traveled extensively. Wife is a nurse. For much of the marriage, the parties lived in North Carolina. In the summer of 2000, the family moved to Jackson, Tennessee, in order for Father to purchase a business, Empire Marble. The parties' daughter, Taylor, has been diagnosed with Attention Deficit Disorder with Hyperactivity (ADHD). Their son, James Ross, suffers from asthma and several food allergies.

On August 20, 2002, Wife filed a complaint for divorce in the Shelby County Circuit Court. As grounds for the divorce, Wife alleged irreconcilable differences and inappropriate marital conduct. Wife sought to be designated as primary residential parent for the two children. Shortly after Wife filed her complaint, the case was transferred to the Madison County Chancery Court.

Husband's answer to Wife's complaint admitted the existence of irreconcilable differences, but denied that he had engaged in inappropriate marital conduct. As a defense, Husband asserted recrimination, claiming that, to the extent that Husband was guilty of inappropriate marital conduct, his actions were in response to Wife's inappropriate marital conduct. Husband's counter-complaint alleged that both parents were fit and proper persons to have custody of the children.

On January 7, 2003, Wife filed a motion pendente lite to obtain child support from Husband pending the trial. The trial court issued an oral ruling requiring Husband to pay monthly child support in the amount of $1,034. For reasons not clear in the record, a written order memorializing that oral ruling was not filed.

Following the January hearing, Husband failed to make the $1,034 monthly child support payments. Consequently, on March 3, 2003, Wife filed a petition against Husband for contempt. On March 4, 2003, a written order was entered, requiring Husband to pay child support in the amount of $1,034.00 per month. Apparently, Husband did not comply with the court's order. Two months later, Husband filed a motion to modify the child support order, alleging that it was based on inaccurate information regarding the amount of his income.

Immediately after Husband filed his motion to modify, Wife filed another petition for contempt, again alleging that Husband had failed to pay the required child support. On June 16, 2003, the trial court granted Wife's motion, finding that Husband was in arrears on his child support obligation and holding Husband in contempt. Husband was also ordered to pay $500 in attorney's fees for the contempt petition.

The bench trial was held on several dates between October 31, 2003, and June 4, 2004. Both parties testified at trial. Wife testified about the parties' roles in the upbringing of their children, ages four and seven at the time of the trial. She said that, when they adopted Taylor, Husband was working in a sales job in which he traveled virtually every week. She indicated that their daughter Taylor's infancy was difficult, that she cried with colic much of the time for four months. She said that Taylor has been diagnosed with Attention Deficit Disorder with Hyperactivity (ADHD) as well as an auditory processing disorder. Wife said that their son Ross has several medical problems. He has asthma and food allergies to nuts, cheese and eggs. The allergies are sufficiently serious that exposure to some of the foods could be fatal, and knowledge of what to do in the event of an inadvertent exposure is crucial. In addition, she said, Ross was very vulnerable to infections and respiratory illnesses, required regular medication and vigilance, and should not be around smoke or animal dander.

Wife said that she had been primarily responsible for the children. One exception, she said, was during an approximately six-week period when Ross was an infant, in which Husband was out of work. During that time, she said, Husband kept the children and she went back to work. She described the situation while she was working and Husband was caring for the children:

Q: What did he do with the children?

A: I'm not sure what he did because when I would come home, he would not have dinner fixed, the house would be horrible. He would still – he would be in his clothes but he hadn't had his bath, his hair would be standing up everywhere, the children would still be in their pajamas and I was upset because I was still tired from just having Ross and I said, 'You know, the least you could do was dress the children and cook dinner.' And, he says, 'I can't do it all.'

Wife testified that, when Husband wanted to purchase the Empire Marble business, she did not want to move from North Carolina to Jackson, Tennessee. She asserted that, when Husband purchased the business, he did not adequately research the business, took on heavy debts in order to purchase it, and put all of the couple's assets into the business. Wife said Husband had promised to put aside $45,000 for taxes, but failed to do so, and mortgaged their home and used their children's college funds without her consent. As the business foundered, he began withholding financial information from her. Finally, she said, he left her and the children, took the money out of their bank accounts, and failed to pay child support.

Wife testified that she works weekdays as a nurse in a physician's office, and also works one weekend a month at a hospital in Jackson. She carried medical insurance on the children and for Husband, took the children to the doctor, and bought the children's clothing and necessities.

Husband testified as well. He acknowledged that, for fifteen years, he was in a sales job that required him to travel approximately 120 days a year. He said that he was fired from that job after he refused to travel internationally during the week that Ross was to be born. After that, he said, he was unemployed for several months, during which time he "stayed at home, and . . . raised both of the kids every day." He disagreed somewhat with Wife's description of his care of the children during that time, explaining that "an infant stays in their pajamas" and "the reason I didn't cook, . . . every time I cooked anything it wasn't good enough for her [Wife] . . . , so I quit cooking."

Husband asserted that he did not believe that Taylor had ADHD, or needed medication for it, but acknowledged that he had not spoken to the physician who diagnosed her. He claimed that Wife had exaggerated some of Ross's food allergies, and described various limitations on Ross's diet.

Husband described Wife as "indifferent" about his purchase of the Empire Marble business, and acknowledged that the business had incurred over $900,000 in debts. He maintained that he had a "game plan" for life after the impending bankruptcy of the company, claiming that "the most

prominent people in this town" would "help me . . . find exactly what I want." If he were designated the children's primary residential parent, he said, "then I'm going to find a job in town that will allow me to be here for them. If I were not to get the kids, then I'll go back into what I know best and just travel in sales." He anticipated that, if he were designated primary residential parent, he would obtain a job paying "between $40,000.00 and $50,000.00 and not travel."

The parties presented considerable testimony from other witnesses, including family members, friends, employees, neighbors, and a clinical social worker. Their testimony addressed numerous issues ranging from marital assets to moral fitness to parent the parties' two children.

On July 27, 2004, the trial court issued a final decree of divorce. The court designated Wife as the primary residential parent, and adopted Wife's proposed permanent parenting plan. Husband's child support obligation remained at $1,034.00 per month, and he was held in contempt of court for his child support arrearage. The trial court also ordered that Husband "shall pay to [Wife] $70,000.00 which shall be non-dischargeable in bankruptcy" and further ordered Husband to pay Wife's attorney "$12,000 as alimony in solido, non-dischargeable in bankruptcy . . . ." Finally, the trial court divided the marital property and taxed the costs of the litigation to Husband. On August 11, 2004, Husband appealed.

On appeal to this Court, Husband raises five issues of alleged error by the trial court: (1) the designation of Wife as primary residential parent; (2) setting Husband's child support obligation at $1,034.00 per month; (3) the $70,000 award to Wife, non-dischargeable in bankruptcy; (4) the award to Wife of $12,000 in attorney's fees; and, (5) the taxing of costs to Husband.

In this non-jury civil action, the trial court's conclusions of law are subject to a *de novo* review and are not entitled to a presumption of correctness. **Kendrick v. Shoemake,** 90 S.W.3d 566, 569 (Tenn. 2002). However, we review the trial court's factual findings *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence requires otherwise**.** Tenn. R. App. P. 13(d). In this case, the trial court did not make findings of fact. When a trial court fails to make specific findings of fact, it becomes incumbent upon this Court to review the record and make a determination as to where the preponderance of the evidence lies. **Kendrick,** 90 S.W.3d at 570; **Ganzevoort v. Russell**, 949 S.W.2d 293, 296 (Tenn. 1997) (citing **Kemp v. Thurmond,** 521 S.W.2d 806, 808 (Tenn. 1975)). Implicit, however, in the trial court's decision is its assessment of the credibility of the witnesses. By virtue of the opportunity to observe the manner and demeanor of the witnesses while testifying, the trier of fact is in the best position to judge the truthfulness of the witnesses. Consequently, this Court gives great weight to the credibility determinations of the trier of fact. **Mid-Century Ins. Co. v. Williams**, 174 S.W.3d 230, 236 (Tenn. Ct. App. 2005).

As Husband's first assignment of error, he challenges the trial court's designation of Wife as the primary residential parent. Our review of this issue is tempered by the understanding that "[t]rial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." **Koch v. Koch**, 874

S.W.2d 571, 575 (Tenn. Ct. App. 1993) (citing *Mimms v. Mimms*, 780 S.W.2d 739 (Tenn. Ct. App. 1989)). The discretion accorded to the trial court is due, in large part, to the fact that custody and visitation decisions hinge on a number of subtle factors, including credibility determinations and the demeanor of witnesses. *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Accordingly, the appellate courts are generally reluctant to second-guess the trial court's decisions. *See, e.g., Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004).

The trial court's responsibility is to make a designation of primary residential parent based on the trial court's determination of the child's best interests. *Johnson*, 165 S.W.3d at 645; *Gaskill*, 936 S.W.2d at 630. This is mandated by statute. *See* T.C.A. § 36-6-106(a) (2005) (requiring that when a court determines custody in a divorce proceeding "such determination shall be made upon the basis of the best interest of the child").

The best interest analysis is largely a determination of which parent provides the most suitable environment for the child to flourish. *See, Nelson*, 66 S.W.3d at 901. The inquiry necessitates a fact-intensive examination of many considerations. *Gaskill*, 936 S.W.2d at 630. Tennessee statutes include a list of relevant factors to be considered. *See* T.C.A. § 36-6-106(a); *see also, Johnson*, 165 S.W.3d at 645–46.

In the instant case, Husband challenges the trial court's designation of Wife as the primary residential parent, arguing that the evidence preponderates against the trial court's ruling. We disagree. From the evidence, it is essentially undisputed that Wife has always been the children's primary caregiver, with the possible exception of a short period of time in which Husband was unemployed. Both children have significant problems that make raising them especially challenging. By virtue of her training as a nurse, as well as her demonstrated ability to provide structure, time and consistency to their upbringing, the trial court apparently found Wife to be better able to meet those challenges. Husband and his witnesses made a variety of accusations against Wife intended to reflect on her fitness as a parent; implicit in the trial court's ruling was a finding that their testimony was not credible. As noted above, we accord great deference to the trial court's determinations of credibility. *Johnson*, 165 S.W.3d at 645. With appropriate deference to the trial court's implicit findings on the credibility of the witnesses, we conclude that the evidence preponderates in favor of the trial court's designation of Wife as primary residential parent.

As Husband's second assignment of error, he argues that the trial court erred in setting his child support obligation at $1,034 per month. Husband's brief argues that the child support obligation was set in error, but provides neither any references to the record to substantiate any of the facts addressed in the argument nor any citation to authority to justify reversal of the trial court's ruling. Such citations to the record are clearly required. *See* Tenn. R. App. P. 27(a)(7); Tenn. R. App. Ct. 6(b). When an appellant argues factual circumstances without appropriate references to the record, this Court may refuse to address the argument. *See Schoen v. J. C. Bradford & Co.*, 642 S.W.2d 420, 427 (Tenn. Ct. App. 1982) (declaring, "This Court is not

under a duty to minutely search a voluminous record to verify numerous unsupported allegations in brief."). Nevertheless, from our review of the record, Husband provided conflicting testimony and documentation regarding the prospects for success for his business and the monthly income he was receiving. We find there was sufficient evidence to support the trial court's award of child support, and the trial court is affirmed on this issue. Husband, of course, may petition the trial court for modification if he shows that his income is now substantially diminished.

Husband next argues that the trial court erred in awarding Wife $70,000 and declaring the same non-dischargeable in bankruptcy. Husband contends that this was an erroneous division of marital property.

The rules of this Court set out specific requirements for the contents of a brief in a domestic relations case in which a party challenges a trial court's disposition of marital property. Specifically, this Court's rules provide:

> In domestic relations appeals where the issues involve the amount or the disposition of the marital property, the appellant's brief shall contain in the statement of facts or in an appendix, an orderly tabulation of all marital property in a form substantially like the form attached hereto. All entries in the table as to value and to whom the property was awarded shall be accompanied by a citation to the record where the information may be found.

Tenn. R. App. Ct. 7(a). As stated in subsection (a), the Rule even provides an exemplar for the proper designation and tabulation of marital assets. In the present case, Husband failed to provide even an explanation of the marital assets at issue, much less an orderly tabulation of the marital property. Consequently, we conclude that this argument is waived.[1] *See,* ***Bean v. Bean***, 40 S.W.3d 52, 54–55 (Tenn. Ct. App. 2000) (discussing the predecessor to Rule 7, Rule 15); ***Spurgeon v. Spurgeon***, 2005 WL 1390067, *2 (Tenn. Ct. App. June 13, 2005); ***Howell v. Howell***, 2002 WL 1905307, *3 (Tenn. Ct. App. Aug. 15, 2002) (noting that "where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements."); ***Durant v. Durant***, 2002 WL 772923, *3 (Tenn. Ct. App. Apr. 30, 2002) (ruling that this Court is "under no duty to search a voluminous record in order to discern the valuation of [a] couple's property.").

Finally, Husband contends that the trial court erred by awarding Wife $12,000 in attorney's fees as alimony in solido and in taxing the costs of the litigation against him. Any award of attorney's fees in a divorce action is within the sound discretion of the trial court and will not be disturbed on appeal unless the appellant can clearly demonstrate an abuse of that

---

[1] We note that the trial court designated the $70,000 as "non-dischargeable in bankruptcy." In fact, it is doubtful that the trial court had the authority to make such a determination. *See, e.g.,* ***In the Matter of Dennnis***, 25F.3d 274, 277 (5th Cir. 1994) (declaring, "[T]he determination of whether a debt is nondischargeable under [11 U.S.C. § 523] is a matter of federal bankruptcy law, not state law.").

discretion. ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995); ***Smith v. Smith,*** 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995). In this case, our review of the record indicates that the trial court's award of a portion of Wife's attorney's fees, as well as costs, was an appropriate exercise of its discretion.

The decision of the trial court is affirmed. Costs on appeal are taxed to Appellant/Defendant James Townsend and his surety, for which execution may issue, if necessary.

 

 

_____

HOLLY M. KIRBY, JUDGE